923 So.2d 929 (2006)
HORSESHOE ENTERTAINMENT d/b/a Horseshoe Casino and Harrah's Entertainment, Inc., Plaintiff-Appellee
v.
Larry LEPINSKI, Defendant-Appellant.
No. 40,753-CA.
Court of Appeal of Louisiana, Second Circuit.
March 8, 2006.
*931 Stone Pigman Walther Wittmann by C. Lawrence Orlansky, Kathryn M. Knight, New Orleans, Briol & Associates, PLLC by Mark J. Briol, William G. Carpenter, for Appellant.
Onebane Law Firm by Frank Spruiell, Jr., Shreveport, Greg Guidry, Michael P. Maraist, Lafayette, for Appellee.
Before BROWN, CARAWAY and PEATROSS, JJ.
CARAWAY, J.
In this suit the employer and its parent company seek enforcement of an employment contract and stock option agreement. The employee responded raising the issue of arbitration as set forth in one of the contracts. The employee now appeals the judgment denying an exception of prematurity and granting only that part of his motion to compel arbitration and to stay the proceedings relating to claims by his employer for monetary damages arising from an employment agreement. Finding no error in the trial court's ruling, we affirm.

Facts
Larry Lepinski served as Senior Vice President and General Manager of Horseshoe Entertainment, d/b/a Horseshoe Casino ("Horseshoe"), in Bossier City, Louisiana. His employment relationship was set forth under an employment agreement (hereinafter the "Horseshoe Contract") which became effective on December 11, 2001.[1] As part of his contract, Lepinski agreed not to disclose confidential information or to solicit or hire Horseshoe's employees, clients or customers for one year after termination of employment. Lepinski worked for Horseshoe in that capacity until his resignation on January 19, 2005. Allegedly, at the time of his resignation, other members of his senior management team in Bossier City also resigned.
Prior to Lepinski's resignation, on July 1, 2004, Harrah's Entertainment, Inc. ("Harrah's), acquired Horseshoe through a Stock Purchase Agreement. Specifically, Harrah's subsidiary, Harrah's Operating Company, Inc., purchased all the outstanding shares of Horseshoe's parent, Horseshoe Gaming Holding Corporation. As a result, Horseshoe became a wholly-owned subsidiary of Harrah's. Because *932 of the Harrah's-Horseshoe corporate arrangement, Harrah's offered Lepinski additional compensation in the form of stock options through a 2004 Equity Incentive Stock Option Award Agreement (hereinafter, "Harrah's Stock Option Agreement"). Harrah's Stock Option Agreement provided for the return of any stock option proceeds in the event that Lepinski voluntarily terminated his employment with Horseshoe and within one year began employment with a competitor of Harrah's or one of its subsidiaries and/or solicited or recruited any employee to a competing business. The first third of those stock options vested on January 1, 2005. Under the terms of Harrah's Stock Option Agreement, Lepinski had thirty days from the date of his resignation of January 19, 2005 to exercise his vested stock options. He did so on February 11, 2005, receiving $139,165.20 from Harrah's.
On or about February 20, 2005, Harrah's and Horseshoe learned that Lepinski had accepted an identical position with a Lake Charles, Louisiana casino. Harrah's immediately forwarded a demand letter to Lepinski requesting return of the stock option proceeds in accordance with the terms of Harrah's Stock Option Agreement. Harrah's also asked Lepinski to issue a sworn statement declaring whether he possessed any confidential information or had solicited any Horseshoe employees to leave employment.
Lepinski failed to respond, and Harrah's and Horseshoe instituted a Petition for Declaratory Judgment, Injunction and Damages against Lepinski. Specifically, Harrah's sought return of the stock option proceeds due to Lepinski's employment with a competitor and alleged solicitation of Horseshoe's management-level employees within the year following Lepinski's resignation. Likewise, Horseshoe sought damages from Lepinski for the violation of the non-solicitation provisions and breach of the Horseshoe Contract. Harrah's and Horseshoe also sought permanent injunctive relief to enforce the solicitation and confidentiality covenants and require Lepinski to return all company information and property in his possession.[2]
Lepinski filed an exception of Prematurity and alternative Motions to Compel Arbitration and to Stay Proceedings relying in part on the arbitration provision (Section 16) of the Horseshoe Contract. Although the Harrah's Stock Option Agreement had no arbitration provision, Lepinski argued that Harrah's stock option claims fell within the broad scope of the arbitration clause of the Horseshoe Contract. In support of his position, Lepinski claimed that Section 5(C) of the Horseshoe Contract covered the claim for repayment of the stock option proceeds by Harrah's. Section 5(C) reads as follows:
5. Compensation. As compensation for the services to be rendered by Employee pursuant to the terms of this Employment Agreement, Employee shall be entitled to receive the following:
* * *
C. the right to participate in any employee stock option or stock purchase plan that may be adopted by Employer for its executive level employees, such participation to be at a level commensurate with that of other executives performing similar duties and at a similar compensation level as that of Employee.
*933 The disputed arbitration provision of the Horseshoe Contract reads as follows:
16. Arbitration. In the event of any dispute or controversy between Employer and Employee with respect to any of the matters set forth herein, both Employer and Employee agree to submit such dispute or controversy to binding arbitration, to be conducted in Las Vegas, Nevada pursuant to the then prevailing rules and regulations of the American Arbitration Association. In such arbitration, the prevailing party shall be entitled, in addition to any award made in such proceeding, to recover all of its costs and expenses incurred in connection therewith, including, without limitation, attorneys' fees. This provision does not in any way affect Section 24 of this Employment Agreement.
At the hearing on the exceptions, Horseshoe conceded that any claims by Horseshoe for money damages were subject to arbitration under Section 16 of the Horseshoe Employment Contract. Lepinski also contended that injunctive relief should be subject to arbitration because Section 24 of the Horseshoe Contract did not expressly provide for injunctive relief through the judicial system. Section 24 of the Horseshoe Contract reads as follows:
24. Injunctive Relief. Employee and Employer each acknowledge that the provisions of Sections 10 and 11 are reasonable and necessary, that the damages that would be suffered as a result of a breach or threatened breach by Employee of Sections 10 and/or 11 may not be calculable, and that the award of a money judgment to Employee for such a breach or threatened breach thereof by Employee would be an inadequate remedy. Consequently, Employee agrees that in addition to any other remedy to which Employer may be entitled in law or in equity, the provisions of Section 10 and 11 may be enforced by Employer by injunctive or other equitable relief, including a temporary and/or permanent injunction (without proving a breach thereof), and Employer shall not be obligated to post bond or other security in seeking such relief.
After hearing the arguments, the trial court stayed and ordered to arbitration the claims of Horseshoe for monetary damages arising from the Horseshoe Employment Contract. The court declined to compel arbitration of any claims by Harrah's or the injunctive requests of either plaintiff. The court also refused to stay the court proceedings during the arbitration of Horseshoe's damage claims. This appeal by Lepinski ensued.

Discussion
On appeal, Lepinski argues that the trial court erred in finding that Harrah's claims, including the repayment of stock option proceeds, are not subject to arbitration. Regarding the rulings concerning the Horseshoe claims, Lepinski asserts that arbitration under the Horseshoe Contract was improperly interpreted as inapplicable to the request for injunctive relief. Finally, Lepinski argues that the trial court erred in declining to stay the remaining claims pending arbitration of Horseshoe damage claims.
Arbitration is a process of dispute resolution in which a neutral third party (arbitrator) renders a decision after a hearing at which both parties have an opportunity to be heard. The object of arbitration is the speedy disposition of differences through informal procedures without resort to court action. The purpose of arbitration would be undermined if, before being compelled to arbitrate, parties were permitted to litigate in order to secure an initial determination that the procedural formalities of the agreement *934 had been satisfied. Conagra Poultry Co. v. Collingsworth, 30,155 (La.App.2d Cir.1/21/98), 705 So.2d 1280. The determination as to whether to enjoin or order arbitration is a question of law. Hansford v. Cappaert Manufactured Housing, 40,160 (La.App.2d Cir.9/21/05), 911 So.2d 901; Conagra Poultry Co., supra. Appellate review of a question of law is simply to determine whether the trial court was legally correct or legally incorrect. Conagra Poultry Co., supra. Arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to so submit. This axiom recognizes the fact that arbitrators derive their authority to resolve disputes only because the parties have agreed in advance to submit such grievances to arbitration. AT & T Technologies, Inc. v. Communications Workers of America, 475 U.S. 643, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986). Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator. Id. The positive law of Louisiana favors arbitration. Aguillard v. Auction Management Corp., 04-2804 (La.6/29/05), 908 So.2d 1.
A court shall stay the trial of an action in order for arbitration to proceed if any party applies for such a stay and shows (1) that there is a written agreement and (2) the issue is referable to arbitration under the arbitration agreement, as long as the applicant is not in default in proceeding with the arbitration. La. R.S. 9:4202; Aguillard, supra. The general rule is that courts will only stay arbitrable claims. Lakeland Anesthesia, Inc. v. United Healthcare of Louisiana, Inc., 03-1662 (La.App. 4th Cir.3/17/04), 871 So.2d 380, writs denied, XXXX-XXXX La. 6/25/04, 876 So.2d 834, 04-0972 (La.6/25/04), 876 So.2d 834; In re Managed Care Litigation, 2003 WL 22410373 (S.D.Fla.2003). Court proceedings will not be stayed simply because a party claims that an arbitration proceeding involving other parties concerns the same issues and conduct. Id. In some cases, it may be advisable to stay litigation among the non-arbitrating parties pending the outcome of the arbitration. The decision is one left to the discretion of the trial court to control its docket. Moses H. Cone Hosp. v. Mercury Construction Corp., 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983); United States For Use of Pensacola Const. Co. v. St. Paul Fire and Marine Ins., 705 F.Supp. 306 (W.D.La.1988). In general, the stay applicant must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else. Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will settle the rights of both. Landis v. North American Co., 299 U.S. 248, 255, 57 S.Ct. 163, 81 L.Ed. 153 (1936).
Lepinski's arguments do not dispute that there are two separate corporations involved in this suit  a parent corporation and its subsidiary. Further, there is no evidence on the record before us showing that Harrah's in any way assumed the contractual obligation of the Horseshoe Contract through its acquisition of the Horseshoe's corporate stock. See, La. C.C. art. 1821, requiring a written agreement for the assumption of an obligation. The law has long been clear that a corporation is a legal entity distinct from its shareholders and the shareholders of a corporation shall not be personally liable for any debt or liability of the corporation. The same principle applies where one corporation wholly owns another. Bujol v. *935 Entergy Services Inc., 03-0492 (La.5/25/04), 2004 WL 1157413. In general a parent corporation may not be held to account for the liabilities of a subsidiary unless the legal separateness of parent and subsidiary have been disregarded in a wide range of corporate matters. Joiner v. Ryder System Inc., 966 F.Supp. 1478, 1483 (C.D.Ill.1996).
Thus, when we examine the factual basis for Harrah's claims as alleged in the petition, Harrah's is seeking to enforce its contract rights under the Harrah's Stock Option Agreement. There are no facts in the record demonstrating that Harrah's can enforce Horseshoe's Employment Contract. We reach this conclusion mindful of Lepinski's assertion regarding Section 5(C) of the Employment Contract. On the record, it was not shown whether the operation of Section 5(C) caused Harrah's to extend the stock option benefits to Lepinski. Despite the obvious joint interests of the parent corporation and its subsidiary in retaining and compensating employees, the language of Section 5(C) does not show that its operation provided Lepinski a contractual right to participate in the Harrah's stock option plan. Section 5(C) was the obligation of Horseshoe, and Harrah's must be assumed to have offered its own stock option plan independent of the Horseshoe Employment Contract.
Additionally, Lepinski argues that certain broad and loose language in the petition of the two corporations suggests that their jointly seeking relief connects Harrah's directly to the Horseshoe Employment Contract for its enforceability. Such technical analysis of the petition in search of estoppel is inappropriate. La. C.C. P. arts. 854 and 865. The Code of Civil Procedure establishes a system of fact pleadings. First South Production Credit Assn. v. Georgia-Pacific, 585 So.2d 545 (La.1991). Theory of the case in the petition is not necessary. L.S. Huckabay, M.D. Memorial Hospital, Inc. v. KPMG Peat Marwick, LLP, 36,775 (La. App.2d Cir.4/9/03), 843 So.2d 1186, writs denied, 03-1334 (La.9/19/03), 853 So.2d 640, 03-1400 (La.9/19/03), 853 So.2d 646. Despite certain joint requests for relief and the two corporations' assertions of legal conclusions, the fact-pleading assertions in the petition reveal that Harrah's seeks relief on the basis of its Stock Option Agreement.
An agreement to arbitrate a dispute with one party cannot encompass disputes against another party when the second party is not mentioned in the written agreement. Hansford, supra. Thus, Harrah's rights against Lepinski are unaffected by the existence of the arbitration provision in the Horseshoe Employment Contract between Lepinski and Horseshoe. For this reason, we also conclude that the theory of direct benefit estoppel is inapplicable to Harrah's claims. Direct benefit estoppel applies when a non-signatory plaintiff sues to enforce a contract containing an arbitration agreement, yet seeks to avoid the arbitration provision in the same agreement. Lakeland Anesthesia, supra. Because Harrah's is suing to enforce an independent agreement from the Horseshoe Contract, direct benefit estoppel does not apply.
Next, regarding the claims of Horseshoe, the trial court also correctly interpreted Section 16 of the Horseshoe Contract which states in part that "[t]his provision does not in any way affect Section 24 of this Employment Agreement." In addressing the procedure for redress of claims under the contract, this language indicates that the arbitration proceedings are not intended to influence or impact the procedure for injunctive relief set forth in Section 24 of the Horseshoe Contract. The one procedure in an arbitral forum *936 shall "not in any way affect" the other procedure in a non-arbitral forum.
Finally, we decline to disturb the trial court's denial of a stay of the claims not subject to arbitration. As discussed above, the general rule is that courts will only stay arbitrable claims. Clearly, the remaining claims pertaining to injunctive relief are not arbitrable. Moreover, with the immediacy associated by injunctive relief, a stay of injunctive relief pending arbitration would defeat the contract's recognized intent for the non-arbitration of an injunctive claim.
Accordingly, the judgment of the trial court is affirmed. Costs of appeal are assessed to appellant.
AFFIRMED.
NOTES
[1] The parties' initial employment agreement was executed on September 18, 1998.
[2] On appeal, Harrah's and Horseshoe concede that the passage of one year since Lepinski's resignation moots claims for injunctive relief relating to the solicitation of Horseshoe employees and customers. Thus, the only remaining injunctive relief claims concern the confidentiality covenant and return of property.