MOORE, J.
Lin these consolidated cases, University of Louisiana Monroe Facilities Inc. (“ULMFI”) appeals a judgment dismissing its claim against Continental Casualty Company (“Continental”), the issuer of a performance bond, on Continental’s exception of prescription; ULMFI seeks supervisory review of a ruling denying its motion to compel arbitration of claims; and several defendants (collectively, “the roofing contractors”) seek supervisory review of a judgment denying their exceptions of insufficient service and citation, lack of procedural capacity, no right of action and prescription. For the reasons expressed, we affirm the judgment that granted Continental’s exception of prescription on the performance bond; we grant ULMFI’s writ application, make it peremptory, and remand the case to the district court to order arbitration of claims; and grant the roofing contractors’ writ application and remand to the district court to refer their exceptions to arbitration.

Factual and Procedural Background

In 2004, ULMFI, as owner, executed a $21 million design/build contract with JPI Apartment Development LP (“JPI”), as general contractor, to renovate nearly 500 dorm rooms, demolish two dorm buildings, and build six new apartment-style buildings and a new student health center on the ULM campus. The design/build contract contained an arbitration clause [1]|2and *128 required the general contractor to have a performance bond.[2] JPI bought a performance bond from Continental with a two-year claims limit.[3] JPI hired a number of subcontractors, including Central Roofing Inc. (“CRI”). The standard-form subcontract with CRI also included an arbitration clause.[4]
Construction of Phase 1 was completed in July 2006; Phase 2 was completed in December 2007. During this time, CRI merged into a different entity, Central Roofing LLC (“CRLLC”); in October 2008, CRLLC changed its name to West Monroe Roofing LLC (“WMR”); and WMR formally dissolved on June 22, 2009.
Also in 2009, ULM personnel began to notice “water intrusion” that was causing structural and external damage to the new buildings. An inspection showed that the roof, stucco, walls and flooring deviated from the contract specifications and industry standards. Filings in this record show that in April 2010, ULMFI began emailing JPI to request mediation or arbitration of these claims, but by then JPI had collapsed, was merely wrapping up creditors’ claims, had no reserves to defend ULM-FI’s claim or |spay a judgment, and thus it would not participate in arbitration.[5]
ULMFI filed this suit on November 26, 2011, naming JPI and its unknown insurer as defendants. The petition alleged that the general contract provided for mediation or arbitration; “however, when ULM-FI attempted to resolve this issue through mediation/arbitration, JPI refused to participate. As such, the arbitration provision is deemed waived and the instant lawsuit is procedurally proper.” By amended petition, ULMFI joined as defendants Continental, which had issued JPI’s performance bond, and CRI. By subsequent amendments, ULMFI also joined as defendants CRI’s successor entities, CRLLC and WMR (“the roofing contractors”), and their liability insurers.[6]
Continental filed a peremptory exception of prescription, asserting the two-year claims limit in its performance bond. It alleged that work was completed in De *129 cember 2007, but ULMFI did not file suit until October 2011 or join Continental on the performance bond until March 2012. ULMFI countered that the bond contained an illegal attempt to shorten the statutory prescriptive period.
The roofing contractors filed exceptions of insufficient service and citation, lack of procedural capacity and no right of action. They showed that ULMFI never effected service on CRI or CRLLC; it served WMR | /‘through Mary McLaughlin, its agent for service,” but by that time, WMR had officially dissolved; also by that time, all the roofing contractors were out of existence, so they had no procedural capacity to be sued. They argued that because the entities are extinct, ULMFI had no right of action to sue them. Continental, as WMR’s liability carrier, later filed an exception of prescription, urging that after WMR’s dissolution on July 22, 2009, ULMFI had exactly three years to file suit, under La. R.S. 12:1338 D; since ULMFI did not join WMR until August 8, 2012, its action was prescribed.
On July 26, 2013, the roofing contractors applied for a temporary restraining order to enjoin ULMFI from seeking arbitration. They conceded that JPI’s general contract and CRI’s subcontract both called for arbitration of claims, but argued that ULMFI had no “privity of contract” with them. They also argued that ULMFI judicially confessed a waiver of arbitration in its original and amended petitions. The court granted the TRO; it was extended and remained in effect until the hearing.
On August 9, 2013, ULMFI filed the instant motion to compel arbitration and stay litigation. It argued that the only reason it “deemed” arbitration waived was that JPI was defunct and refused to participate, but that there was no intent to waive arbitration. It also argued that all subcontractors were bound to arbitration.

Action of the District Court

At a hearing on October 22, 2013, the court heard Continental’s exception of prescription. The court applied the two-year claims limit in the .performance bond, sustaining the exception without reasons. ULMFI has 1 ¿appealed this judgment (No. 49,307-CA).
At a hearing on October 25, 2013, the court heard all the remaining exceptions and ULMFI’s motion to compel arbitration. Although the court initially stated, “It’s clear to me there is some agreement to arbitrate here,” it then accepted the roofing contractors’ argument that the subcontract did not define “owner” to be ULMFI: “I find your argument convincing. * * * I’m walking in and reverse [sic] myself.” The court denied the motion to compel arbitration, and ULMFI took a writ to challenge this (No. 49,156-CW). Without stating reasons, the court also denied all exceptions. The roofing contractors and their liability carriers took a writ to challenge this (No. 49,148-CW).
This court granted the writ applications and ordered them consolidated with the appeal on February 27, 2014.

Discussion: Two-Year Limitation on Performance Bond

By its appeal, ULMFI urges the court erred in applying the two-year claims limit stated in the performance bond instead of the standard 10-year limit for personal actions stated in La. C.C. art. .3499. It shows that a juridical act cannot make “the requirements of prescription more onerous,” La. C.C. art. 3471, and contends that shortening the prescriptive period is a nullity. Cameron v. Bruce, 42,873 (La.App. 2 Cir. 4/23/08), 981 So.2d 204, unit denied, 2008-1127 (La.9/19/08), 992 So.2d 940; Prestridge v. Bank of Jena, 05-545 (La.App. 3 Cir. 3/8/06), 924 So.2d 1266, writ denied, 2006-0836 (La.6/2/06), 929 So.2d *130 1261. It also contends that La. C.C. art. 3040, which permits a surety agreement to be “qualified, conditioned, or | limited in any lawful manner,” does not exempt sureties from Art. 3471, and that cases appearing to do so are unpersuasive because they do not mention Art. 3471. Finally, it urges the theory of contra non valentem to suspend its action until it discovered the hidden defects in JPI’s work. By reply brief, ULMFI also contends that courts apply the discovery rule in cases of defective construction and redhibition, as in Landry v. Blaise Inc., 2002-0822 (LaApp. 4 Cir. 10/23/02), 829 So.2d 661, and Leach v. Alonso, 95-325 (La.App. 3 Cir. 10/4/95), 663 So.2d 344, writ denied, 95-2662 (La.1/26/96), 666 So.2d 671. It concludes that this court should reverse and reinstate the claim against Continental.
Continental replies that the district court applied a plain reading of the two-year limit in the performance bond. It also argues that reducing the period for claims is permitted under La. C.C. art. 3040, as recognized in cases like National Tea Co. v. Plymouth Rubber Co., 95-254 (La.App. 5 Cir. 10/18/95), 663 So.2d 801, J.B. Mouton & Sons Inc. v. Alumawall Inc., 583 So.2d 157 (La.App. 3 Cir.1991), and Travelers Cas. & Sur. Co. of Amer. v. University Facilities Inc., 2011 WL 1558009 (E.D.La.4/25/11). It contends that the cases cited by ULMFI do not involve performance bonds. Finally, it submits that contra non valentem applies only in exceptional circumstances, and such are not present here; in fact, no case has ever applied it to suspend the suit limitation period in a surety bond. It urges this court to affirm.
Suretyship is an accessory contract by which a person binds himself to a creditor to fulfill the obligation of another upon the failure of the latter |7to do so. La. C.C. art. 3035. Suretyship must be express and in writing. La. C.C. art. 3038. Suretyship may be qualified, conditioned, or limited in any lawful manner. La. C.C. art. 3040. Louisiana courts have consistently held that the two-year limit in suretyship contracts is valid and enforceable. National Tea Co. v. Plymouth Rubber Co., supra; J.B. Mouton & Sons Inc. v. Alumawall Inc., supra; Con-Plex, Div. of U.S. Indus. Inc. v. Vicon Inc., 448 So.2d 191 (La.App. 1 Cir.1984); Landis & Young v. Gossett & Winn, 178 So. 760 (La.App. 2 Cir.1937), unit denied (not rep., 1938); Travelers Cas. & Sur. Co. v. University Facilities Inc., supra (gathering cases); Kiva Const. & Eng’g Inc. v. International Fidelity Ins. Co., 749 F.Supp. 753 (W.D.La.1990), aff'd, 961 F.2d 213 (5 Cir.1992).
We recognize that Art. 3471 declares null any juridical act purporting to “make the requirements of prescription more onerous.” We also recognize that Cameron v. Bruce and Prestridge v. Bank of Jena, supra, invalidated contract provisions that purported to reduce the period of liberative prescription. These cases, however, did not involve suretyship contracts, which are specially governed by Art. 3040. When two statutes apply to the same situation, the special statute prevails over the general one. Louisiana Fed’n of Teachers v. State, 2013-0120 (La.5/7/13), 118 So.3d 1033; Silver Dollar Liquor Inc. v. Red River Parish Police Jury, 2010-2776 (La.9/7/11), 74 So.3d 641. The special provisions of Art. 3040 will prevail over the general principles of Art. 3471.
In National Tea Co. v. Plymouth Rubber Co., supra, the court upheld a two-year limitation similar to the one in Continental’s performance bond Land rejected an argument identical to ULMFI’s. The court found the two-year period was (1) clearly stated in the performance bond and (2) reasonable because the obligation of the bond concerned only finishing the job *131 in the event the general contractor failed to do so, and not providing a warranty against defective construction.
By its own terms, the instant bond did not supply the same prescriptive period as the design/build contract itself; hence, it was not a case of contractual warranty subject to the standard 10-year prescriptive period. See also Kiva Const & Eng’g v. International Fidelity, supra. We agree with this reasoning and find that it excludes the application of contra non valentón or the discovery rule.
ULMFI’s assignment of error lacks merit. The district court did not err in applying the two-year limit stated in the performance bond. The judgment in No. 49,307-CA is affirmed.

Motion to Compel Arbitration

By its writ application, ULMFI urges the court should have compelled arbitration. It shows that CRI, the subcontractor, expressly consented to arbitration, and did so in language that excluded any consideration of whether ULMFI was designated as “owner” or even signed the subcontract. ULMFI also argues that arbitration is favored and must be ordered “even when the scope of an arbitration clause is fairly debatable or reasonably in doubt,” Aguillard v. Auction Mgmt. Corp., 2004-2804 (La.6/29/04), 908 So.2d 1. In brief, ULMFI does not directly address the contention that it waived arbitration by filing suit, but shows that the issue [9of waiver must be decided by the arbitrator, not by the court. International River Ctr. v. Johns-Manville Sales Corp., 2002-3060 (La.12/3/03), 861 So.2d 139. It urges the court to grant the writ and order the case to arbitration.
Continental, with the other liability carriers, urge that they never consented to arbitration, even if CRI did. They argue that nonsignatories are exempt from arbitration, Horseshoe Ent. v. Lepinski, 40,753 (La.App. 2 Cir. 3/8/06), 923 So.2d 929, writ denied, 2006-0792 (La.6/2/06), 929 So.2d 1259; Prasad v. Bullard, 10-291 (La.App. 5 Cir. 10/12/10), 51 So.3d 35, and that the Direct Action Statute applies only in a lawsuit, not in arbitration.[7] They argue that ULMFI waived arbitration by failing to request it within a reasonable time, as required by § 10.3 of the design/build contract, and they were prejudiced by not receiving any notice of arbitration until years after the contract was completed and all the roofing contractors’ business entities had dissolved. They urge this court to deny the writ.
The roofing contractors reiterate Continental’s arguments and add that ULMFI waived its right to arbitration by filing an original petition and three amended petitions, all of which were totally inconsistent with a demand for arbitration. Simpson v. Pep Boys-Manny Moe & Jack Inc., 2003-0358 (La.App. 4 Cir. 4/10/03), 847 So.2d 617; Ritzel Commc’ns Inc. v. Mid-American Cellular Tel. Co., 989 F.2d 966 (8 Cir.1993). They concede that JPI, the general contractor, may have convinced ULMFI that it |10was insolvent and could not participate in arbitration, but they (the roofing contractors) were unaware of this and unable to pursue legal remedies *132 against JPI while it still had assets. They urge this court to deny the writ.
Louisiana law favors arbitration as a preferred method of alternative dispute resolution. Aguillard v. Auction Mgmt. Corp., supra; Long v. Jeb Breithaupt Design Build, 44,002 (La.App. 2 Cir. 2/25/09), 4 So.3d 930. Specifically, La. R.S. 9:4201 provides:
A provision in any written contract to settle by arbitration a controversy thereafter arising out of the contract, or out of the refusal to perform the whole or any part thereof, or an agreement in writing between two or more persons to submit to arbitration any controversy existing between them at the time of the agreement to submit, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.
Similarly, the Federal Arbitration Act, 9 U.S.C. § 1 et seq., reflects a “liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary.” Moses H. Cone Mem. Hosp. v. Mercury Const. Co., 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). One of the primary reasons for the existence of arbitration agreements is to achieve streamlined proceedings and expeditious results. Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth Inc., 473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985); FIA Card Servs. v. Gibson, 43,131 (La.App. 2 Cir. 3/19/08), 978 So.2d 1230. It is of no moment that an arbitrable claim may be intertwined with other claims; an arbitrable claim must be referred to arbitration “even where the result would be possibly inefficient maintenance of separate proceedings in different forums.” Dean Witter Reynolds v. Byrd, 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985); Bossier Parish Police Jury v. Walton Const. Co., 45,586 (La.App. 2 Cir. 11/17/10), 56 So.3d 271. Although arbitration is a matter of contract, nonparties to an arbitration provision may be bound by that provision under accepted theories of state law. Arthur Andersen LLP v. Carlisle, 556 U.S. 624, 129 S.Ct. 1896, 173 L.Ed.2d 832 (2009); Gunderson v. F.A. Richard & Assocs. Inc., 2005-917 (La.App. 3 Cir. 8/23/06), 937 So.2d 916.
The initial issue is whether the parties made an agreement for arbitration. La.R.S. 9:4203; International River Ctr. v. Johns-Manville Sales Corp., supra. As noted, the subcontract between JPI and CRI provides:
Should any dispute between Contractor and Owner arise involving acts or omissions of Subcontractor, Subcontractor consents to be enjoined as a party in any arbitration that may occur between Contractor and Owner. In the event of such joinder, the arbitration provisions of the Owner’s Contract with Contractor * * * shall control over any conflicting provisions of this Subcontract Agreement.
We are unpersuaded by Continental’s reliance on another portion of the subcontract, that provides for arbitration of disputes between CRI and JPI involving $100,000 or less.[8] By contrast, the passage quoted above is a clear consent by CRI to be joined in arbitration of disputes *133 between ULMFI and JPI, arising out of acts or omissions of CRI, with an agreement for the arbitration provisions of the design/build contract to prevail. CRI clearly consented to the motion to compel arbitration filed by ULMFI in this case.
We are also unpersuaded by Continental’s argument that as a nonparty to CRI’s subcontract, it cannot be bound to the arbitration | ^provision therein. As noted, a nonparty may indeed be bound to arbitration. Arthur Andersen LLP v. Carlisle, supra; Gunderson v. F.A. Richard & Assocs., supra. Ordinarily, the injured person may sue an insurer directly. La. R.S. 22:1269 B(1). ULMFI alleged that Continental was CRI’s liability insurer; Continental never conceded this status, referring to the roofing contractors as “their alleged insured(s),” but it has offered no policy language opting out or stating that, if its insured agreed to arbitration of claims, Continental would not participate. We also note that the cases of Horseshoe Ent. v. Lepinski, supra, -and Prasad v. Bullard, supra, did not involve liability carriers trying to avoid arbitration to which their insureds had agreed. On this record and in these special circumstances, we find that Continental (along with National Fire and Transportation Insurance) have consented to the arbitration to which their respective insureds agreed.
Further, we find no merit to Continental’s contention, and the district court’s finding, that the arbitration provision was invalid because the subcontract did not define the owner to be ULMFI. Although this document did not define the “owner,” it defined the “project” as “University of Louisiana Monroe Phase II located at 4106 Bon Aire Drive, Monroe, LA 71209,” stated that the subcontract was contingently assigned to the owner, and referred to a construction agreement between JPI and one of its sister entities.[9] On this record, no one can seriously assert that the owner was anything other than ULMFI. In light of the whole subcontract and the favored status of arbitration, we find that the failure to clearly identify the |1sowner is not fatal to this arbitration clause.
With this conclusion, we find that the district court erred in refusing to order the case to arbitration. We note the contention of Continental and the roofing contractors that ULMFI waived the right to demand arbitration by filing a suit. However, the law is firmly established that once the court finds that the parties made an arbitration agreement and failed to comply with it, the issue of alleged waiver is a question for the arbitrator, not for the court. International River Ctr. v. Jones-Manville Corp., supra, citing Howsam v. Dean Witter Reynolds, 587 U.S. 79, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002); Wilson v. Allums, 47,147 (La.App. 2 Cir. 6/8/12), 94 So.3d 908, writ denied, 2012-1611 (La.10/26/12), 99 So.3d 650. We therefore pretermit any consideration of the merits of the exceptions and refer them to the arbitrator for ultimate determination.
For these reasons, ULMFI’s assignment of error has merit. The district court erred in denying the motion to compel arbitration. The writ in No. 49,156-CA is granted and made peremptory, and the matter is remanded to the district court with directions to refer the case to arbitration.

The Roofing Contractors’ Exceptions

By their writ application, the roofing contractors contend that after CRI merged with CRLLC, this terminated *134 CRI’s existence and capacity to be sued, under La. R.S. 12:1361 and 12:115; then, after WMR dissolved, its business terminated except for any action “commenced timely against it,” La. R.S. 12:1340 C; although the law allows claims to be filed against a dissolved LLC, such claims must be filed within three years of dissolution |14or else they are “barred perpetually and peremptorily,” La. R.S. 12:1338 D; and because the claims were barred, service of process on WMR’s former agent was without effect, La. C.C.P. arts. 1261, 1266. They urge the court to grant the writ and sustain all exceptions.
Continental asserts that ULMFI sued WMR over three years after WMR dissolved, and thus all claims have prescribed and perempted. It also urges this court to grant the writ and sustain the exceptions.
ULMFI contends that the roofing contractors simply omitted key portions of the statutes on which they relied. Specifically, La. R.S. 12:1338 B requires the dissolving LLC to provide notice to any potential creditors. The peremptive period of § 1338 D starts to run “three years after the giving or completion of publication of the notice, whichever is Iater[.]” ULMFI submits that because the roofing contractors never provided the required notice, the three-year period never began to run, and the request for arbitration was therefore timely. It urges this court to deny the writ.
When a claim is subject to arbitration, the objection that the claim is untimely is referred to the arbitrator. Obey Financial Group v. Blue, 2013-554 (La.App.11/6/13), 125 So.3d 573; Parker v. St. Tammany Parish Hosp. Serv. Dist., 94-2278 (La.App. 1 Cir. 2/27/96), 670 So.2d 531, unit denied, 96-0805 (La.5/10/96), 672 So.2d 925. In fact, all “procedural questions” which grow out of the dispute and bear on its final disposition are presumptively not for the court, but for the arbitrator to decide. International River Ctr. v. Johns-Manville Sales Corp., supra, and citations therein.
11sEven though the parties appear to have litigated prescription and the other exceptions in the district court, in the interest of the policy favoring arbitration, we must refer these to the arbitrator.
The district court therefore erred in ruling on the roofing contractors’ and their insurers’ exceptions. The writ in No. 49,-148-CW is granted and made peremptory, for the purpose of referring the exceptions to arbitration.

Conclusion

For the reasons expressed, the judgment granting Continental Casualty Company’s exception of prescription on the performance bond is affirmed at ULMFI’s cost.
The writ application of ULMFI is granted and made peremptory, and the case remanded to the district court to refer the claims to arbitration.
The writ application of West Monroe Roofing LLC, Central Roofing Inc., Central Roofing LLC, Continental Casualty Company, National Fire Insurance Company of Hartford and Transportation Insurance Company is also granted and made peremptory, for the purpose of referring the exceptions to arbitration. Costs of the writ applications are to be paid one-half by ULMFI and one-half by the roofing contractors and their insurers.
AFFIRMED IN PART; WRITS GRANTED AND MADE PEREMPTORY; CASE REMANDED WITH INSTRUCTIONS TO REFER TO ARBITRATION.

. The "Standard Form of Agreement between Owner and Design/Builder” provided, in pertinent part, § 10.1: "Claims, disputes or other matters in question between the parties to this Part 2 Agreement arising out of or relating to this Part 2 Agreement or breach thereof shall be subject to and decided by mediation or arbitration”; § 10.3: "A demand for arbitration shall be made within a reasonable *128 time after the claim, dispute or other matter in question has arisen.”

. § 7.5 provided in part: "Design/Builder and/or JPI * * * shall provide a Payment and Performance Bond covering the full amount of the construction costs shown on the Schedule of Values attached!.]”

. The "AIA Document A312 Performance Bond” provided, ¶ 9: "Any proceeding, legal or equitable, under this Bond may be instituted in any court of competent jurisdiction in the location in which the work or part of the work is located and shall be instituted within two years after Contractor Default or within two years after the Contractor ceased working or within two years after the Surety refuses or fails to perform its obligations under this Bond, whichever occurs first.”

. Subcontract, Exhibit "A” General Provisions, ¶ 25, second paragraph: "Should any dispute between Contractor and Owner arise involving acts or omissions of Subcontractor, Subcontractor consents to be enjoined as a party in any arbitration that may occur between Contractor and Owner. In the event of such joinder, the arbitration provisions of the Owner’s Contract with Contractor * * * shall control over any conflicting provisions of this Subcontract Agreement.”

. An email dated August 3, 2011, advised ULMFI’s counsel that "JPI has not been able to locate the subcontractor's contracts (which would speak to [the] arbitration clause you mention)” and "if you and your client do pursue arbitration, please be advised that JPI Apartment Development * * * will not participate.”

. Somewhat confusingly, CRI's liability carrier was Continental, which appears in the writ applications in this capacity, separate from its capacity as the bond issuer in the appeal. The roofing contractors’ other insurers are National Fire Insurance Company of Hartford and Transportation Insurance Company.

. La. R.S. 22:1269 B(1) provides, in part, "The injured person or his survivors or heirs * * *, at their option, shall have a right of direct action against the insurer within the terms and limits of the policy; and, such action may be brought against the insurer alone, or against both the insured and the insurer jointly and in solido, in the parish in which the accident or injury occurred on in the parish in which -an action could be brought against either the insured or the insurer under the general rules of venue prescribed by [La. C.C.P. art. 42] only[.]”

. The subcontract, ¶ 25, first paragraph, provides in part: "All claims or disputes between Subcontractor and Contractor arising out of or relating to the Contract Documents or breach thereof involving $100,000 or less shall be decided by arbitration governed by the Federal Arbitration act and, in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association unless the parties mutually agree otherwise.”

. The "owner’s contract” was between JPI Apartment Development LP and JPI Apartment Construction LP.