GARRETT, J.
The plaintiff, Traders' Mart, Inc. ("Traders' Mart"), appeals from a trial court judgment sustaining an exception of prematurity filed by the defendant, AOS, Inc., d/b/a/ MoneyBlock ("AOS"), based on a finding that the plaintiff's claims alleging unfair trade practices were subject to arbitration. For the following reasons, we affirm the trial court judgment.
FACTS
Traders' Mart is a stock brokerage business trading in commodities and securities for customers and is owned by E. Lee Carter. In order to buy and sell commodities and securities on behalf of clients of Traders' Mart, Carter personally entered into an "Independent Representative Agreement" with AOS, Inc., a broker/dealer, to act as an independent contractor to make trades for the purchase and sale of various securities. The agreement was executed in September 2012. The contract contained an arbitration agreement, which stated:
Any controversy between Company and Contractor arising out of or relating to this Agreement [or] the breach thereof shall be settled in arbitration in accordance with the rules of the FINRA.[1 ] Any arbitration hereunder and the award of the arbitrators, or of a majority of them, shall be final, and the judgment upon the award rendered may be entered in any court (state or federal) having jurisdiction.
Carter devoted a large part of his time to trading commodities and Tammy Recoulley, a registered representative working for Traders' Mart, handled most of the stock brokerage business. Traders' Mart asserted that AOS assisted Recoulley in listing herself as the representative for all Traders' Mart clients, regardless of which representative established the business relationship.
*424 Recoulley left her job at Traders' Mart in early 2016, and opened a brokerage business, taking Traders' Mart clients with her. Traders' Mart claimed that Recoulley was not authorized to trade mutual funds or represent clients not living in Louisiana. Traders' Mart maintained that, in the second quarter of 2016, AOS reassigned to Carter out-of-state clients and inactive accounts. According to Traders' Mart, when Carter was reviewing information about the transferred accounts, he had trouble with his computer. He emailed a few pages of customer information to a different computer in the office with a different email address in order to print information for record-keeping purposes. AOS contended that this constituted a breach of confidence regarding the information of those customers. AOS terminated Carter's contract, sent notices to all customers stating that Carter was no longer associated with AOS, and, if customers inquired, they were encouraged to transfer their accounts to Recoulley.
Traders' Mart filed this suit in February 2017, alleging that AOS and Recoulley were guilty of unfair and deceptive trade practices, in violation of La. R.S. 51:1401, et seq. , the Louisiana Unfair Trade Practices Act ("LUTPA"). Traders' Mart referenced the contract between AOS and Carter and stated that the termination of Carter's contract "is part and parcel of the scheme through which the defendants have undertaken to steal the business of Traders' Mart." Traders' Mart also claimed that Recoulley embezzled funds from the company by making unauthorized withdrawals from the general account and by getting funds for the payment of expenses and then paying the expenses out of the Traders' Mart business account.
In June 2017, AOS filed a peremptory exception of no cause of action and a dilatory exception of prematurity, along with a motion to stay the litigation pending arbitration.[2] AOS asserted that the suit was premature because the claim arose from the contract between AOS and Carter which must first be submitted to arbitration. AOS urged that the arbitration clause applied to Traders' Mart because, even though Traders' Mart was a nonsignatory to the agreement, it benefited from the contract and is now asserting a LUTPA claim based upon the existence and alleged breach of the contract. AOS argued that Traders' Mart is bound by the arbitration clause through the theory of direct benefits estoppel.[3]
An evidentiary hearing was held on the exception of prematurity. Carter testified that he owns and operates Traders' Mart. Carter stated that the purpose of the contract with AOS was to allow him to make transactions on behalf of the clients of Traders' Mart. The company could not trade on its own because it is not a broker/dealer. Someone in the company had to be associated with a brokerage house in order to do trades. Carter testified that the cancellation of the contract was wrongful *425 and was part of a scheme to deprive Traders' Mart of business and to unfairly compete with it. Carter stated that the termination of the contract damaged the ability of Traders' Mart to be able to sustain itself. Carter acknowledged that he was aware of the arbitration clause, but he signed the contract as an individual and not on behalf of Traders' Mart.
AOS agreed that Traders' Mart was not a party to the contract containing the arbitration requirement. However, it urged that, under the circumstances presented, Traders' Mart could be bound by the arbitration requirement even though it was a nonsignatory. According to AOS, the claims asserted by Traders' Mart are intertwined and dependent upon the contract. AOS argued that the cancellation of the contract with Carter was the basis of the LUTPA suit by Traders' Mart, which was suing for the loss of money that resulted from moving accounts to Recoulley. AOS maintained that the arbitration requirement applied to Traders' Mart, even though it was a nonsignatory, because, throughout the life of the contract, the company embraced it.
Traders' Mart countered that this was not a suit on a contract, it was not complaining of a violation of the contract, and it was not seeking to enforce the contract. Traders' Mart urged that this was a suit on a tort claim which did not arise out of the contract. Therefore, Traders' Mart asserted that the arbitration clause in the contract between AOS and Carter was not applicable to it.
After hearing all the evidence and the arguments presented by the parties, the trial court determined that Traders' Mart was bound by the arbitration agreement, even though it did not sign the contract. The court found that the evidence established that Traders' Mart derived benefits from the contract and was attempting to enforce it. The trial court granted the exception of prematurity, stayed the proceedings pending arbitration, found that a motion to compel discovery was premature, and held that the exception of no cause of action was moot. A motion for sanctions was denied.[4]
Traders' Mart filed a writ application objecting to the trial court judgment. This court granted the writ and remanded to the trial court for perfection of an appeal.[5]
ARBITRATION AGREEMENT
On appeal, Traders' Mart argues that the trial court erred in granting the exception of prematurity, based upon its finding that, even though Traders' Mart was a nonsignatory to the contract between AOS and Carter, it was still bound by the arbitration requirement. Under the facts presented *426 here, this argument is without merit.
Legal Principles
Arbitration is a process of dispute resolution in which a neutral third party (arbitrator) renders a decision after a hearing at which both parties have an opportunity to be heard. The object of arbitration is the speedy disposition of differences through informal procedures without resort to court action. The determination as to whether to enjoin or order arbitration is a question of law. Hansford v. Cappaert Manufactured Housing , 40,160 (La. App. 2 Cir. 9/21/05), 911 So.2d 901 ; Horseshoe Entm't v. Lepinski , 40,753 (La. App. 2 Cir. 3/8/06), 923 So.2d 929, writ denied , 2006-0792 (La. 6/2/06), 929 So.2d 1259. Appellate review of a question of law is simply to determine whether the trial court was legally correct or legally incorrect. Horseshoe Entm't v. Lepinski , supra .
Louisiana and federal law explicitly favor the enforcement of arbitration clauses in written contracts. The Louisiana Binding Arbitration Law ("LBAL") is set forth in La. R.S. 9:4201, et seq. , and expresses a strong legislative policy favoring arbitration. Duhon v. Activelaf, LLC , 2016-0818 (La. 10/19/16), --- So.3d ----, 2016 WL 6123820, cert. denied , --- U.S. ----, 137 S.Ct. 2268, 198 L.Ed. 2d 700 (2017). See also Univ. of Louisiana Monroe Facilities, Inc. v. JPI Apartment Dev., L.P. , 49,148 (La. App. 2 Cir. 10/8/14), 151 So.3d 126, writ denied , 2014-2344 (La. 2/6/15), 158 So.3d 818, and writ denied , 2014-2366 (La. 2/6/15), 158 So.3d 820. La. R.S. 9:4201 provides:
A provision in any written contract to settle by arbitration a controversy thereafter arising out of the contract, or out of the refusal to perform the whole or any part thereof, or an agreement in writing between two or more persons to submit to arbitration any controversy existing between them at the time of the agreement to submit, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.
Such favorable treatment echoes the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, et seq. The LBAL is virtually identical to the FAA, and determinations regarding the viability and scope of arbitration clauses are the same under either law, thus federal jurisprudence interpreting the FAA may be considered in construing the LBAL. See Aguillard v. Auction Mgmt.Corp. , 2004-2804 (La. 6/29/05), 908 So.2d 1 ; Duhon v. Activelaf, LLC , supra .
The defense to a petition that a plaintiff is not entitled to judicial relief because of a valid agreement to submit claims to arbitration may be raised by the dilatory exception pleading prematurity, pursuant to La. C.C.P. art. 926(A)(1) ; O'Neal v. Total Car Franchising Corp. , 44,793 (La. App. 2 Cir. 12/16/09), 27 So.3d 317. It may also be raised by a motion to stay the proceeding pending arbitration. See Long v. Jeb Breithaupt Design Build Inc. , 44,002 (La. App. 2 Cir. 2/25/09), 4 So.3d 930.
Prematurity is determined on the basis of the showing made at the in limine trial of the exception, including evidence introduced at the trial thereof. La. C.C.P. arts. 929, 930 ; Long v. Jeb Breithaupt Design Build Inc. , supra ; Town of Homer, Inc. v. Gen. Design, Inc. , 42,027 (La. App. 2 Cir. 5/30/07), 960 So.2d 310, writ denied , 2007-1820 (La. 11/9/07), 967 So.2d 510. When the issue of failure to arbitrate is raised by the exception pleading prematurity, the defendant pleading the exception has the burden of showing the existence of a valid contract to arbitrate, by reason of which the judicial action is premature.
*427 O'Neal v. Total Car Franchising Corp. , supra ; Broussard v. Compulink Bus. Sys., Inc. , 41,276 (La. App. 2 Cir. 8/23/06), 939 So.2d 506 ; Johnson's, Inc. v. GERS, Inc. , 34,268 (La. App. 2 Cir. 1/24/01), 778 So.2d 740.
Arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to so submit. This axiom recognizes the fact that arbitrators derive their authority to resolve disputes only because the parties have agreed in advance to submit such grievances to arbitration. AT & T Technologies, Inc. v. CommunicationsWorkers of America , 475 U.S. 643, 106 S. Ct. 1415, 89 L.Ed.2d 648 (1986) ; Horseshoe Entm't v. Lepinski , supra . Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator. The positive law of Louisiana favors arbitration. Horseshoe Entm't v. Lepinski , supra .
Ordinarily, the threshold inquiry is whether the parties have agreed to arbitrate the dispute in question. Johnson's, Inc. v. GERS, Inc. , supra . This determination involves two considerations: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement. Long v. Jeb Breithaupt Design Build Inc. , supra .
Discussion
In order to determine whether Traders' Mart should be required to submit its LUTPA claim to arbitration, we begin by examining whether there is a valid agreement to arbitrate between the parties. It is clear that Traders' Mart was a nonsignatory to the agreement between AOS and Carter. Arbitration agreements apply to nonsignatories only in rare circumstances. Hellenic Inv. Fund, Inc. v. Det Norske Veritas , 464 F.3d 514 (5th Cir. 2006). Six theories for binding a nonsignatory have been recognized: (a) incorporation by reference; (b) assumption; (c) agency; (d) veil-piercing/alter ego; (e) estoppel; and (f) third-party beneficiary. See Arthur Andersen LLP v. Carlisle , 556 U.S. 624, 129 S.Ct. 1896, 173 L.Ed.2d 832 (2009) ; Bridas S.A.P.I.C. v. Gov't of Turkmenistan , 345 F.3d 347 (5th Cir. 2003) ; Greene v. Chase Manhattan Auto. Fin. Corp. , 2003 WL 22872102 (E.D. La. 12/3/03).
The jurisprudence recognizes two types of estoppel through which arbitration may be required when one party is not a signatory to the agreement requiring arbitration, equitable estoppel and direct benefits estoppel. Equitable estoppel is the effect of the voluntary conduct of a party whereby he is barred from asserting rights against another party justifiably relying on such conduct and who has changed his position to his detriment as a result of such reliance. Billieson v. City of New Orleans , 2002-1993 (La. App. 4 Cir. 9/17/03), 863 So.2d 557, writ denied , 2004-0563 (La. 4/23/04), 870 So.2d 303 ; Lakeland Anesthesia, Inc. v. CIGNA Healthcare of LA, Inc. , 2001-1059 (La. App. 4 Cir. 2/6/02), 812 So.2d 695. This version of estoppel applies only to prevent a signatory from avoiding arbitration with a nonsignatory when the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed. The reverse is not also true. A signatory may not estop a nonsignatory from avoiding arbitration regardless of how closely affiliated that nonsignatory is with another signing party. See Bridas S.A.P.I.C. v. Gov't of Turkmenistan , supra ; Greene v. Chase Manhattan Auto. Fin. Corp. , supra ;
*428 Grigson v. Creative Artists Agency, L.L.C. , 210 F.3d 524 (5th Cir. 2000), cert. denied , 531 U.S. 1013, 121 S.Ct. 570, 148 L.Ed.2d 488 (2000) ; Lakeland Anesthesia, Inc. v. United Healthcare of La., Inc. , 2003-1662 (La. App. 4 Cir. 3/17/04), 871 So.2d 380, writ denied , 2004-0969 (La. 6/25/04), 876 So.2d 834, and writ denied , 2004-0972 (La. 6/25/04), 876 So.2d 834. Because AOS, a signatory, is seeking to require Traders' Mart, a nonsignatory, to comply with the arbitration requirement, equitable estoppel has no application in this matter.
However, equitable estoppel is distinguishable from direct benefits estoppel. AOS contends that Traders' Mart should be held to the arbitration requirements of the contract with Carter through the theory of direct benefits estoppel. The courts have applied direct benefits estoppel to bind a nonsignatory to an arbitration agreement when the nonsignatory knowingly exploits the contract containing the arbitration clause and obtains a direct benefit from that contract. See Hellenic Inv. Fund, Inc. v. Det Norske Veritas , supra ; Greene v. Chase Manhattan Auto. Fin. Corp. , supra . See a lso Billieson v. City of New Orleans , supra .
To satisfy the knowledge requirement, the case law requires that the nonsignatory have had actual knowledge of the contract containing the arbitration clause. Noble Drilling Servs., Inc. v. Certex USA, Inc. , 620 F.3d 469 (5th Cir. 2010) ; Bridas S.A.P.I.C. v. Gov't of Turkmenistan , supra ; In re Lloyd's Register N. Am., Inc. , 780 F.3d 283 (5th Cir. 2015), cert. denied , --- U.S. ----, 136 S.Ct. 64, 193 L.Ed.2d 31 (2015). Under those circumstances, a signatory may compel a nonsignatory to comply with the arbitration agreement.
Direct benefits estoppel involves nonsignatories who, during the life of the contract, have embraced the contract despite their nonsignatory status but then, during litigation, attempt to repudiate the arbitration clause in the contract. See Hellenic Inv. Fund, Inc. v. Det Norske Veritas , supra ; Noble Drilling Servs., Inc. v. Certex USA, Inc. , supra . See also Horseshoe Entm't v. Lepinski , supra ; Courville v. Allied Professionals Ins. Co. , 2016-1354 (La. App. 1 Cir. 4/12/17), 218 So.3d 144, writ denied , 2017-0783 (La. 10/27/17), 228 So.3d 1223 ; Lakeland Anesthesia, Inc. v. United Healthcare of La., Inc. , supra ; Greene v. Chase Manhattan Auto. Fin. Corp. , supra .
A nonsignatory can "embrace" a contract containing an arbitration clause in two ways: (1) by knowingly seeking and obtaining "direct benefits" from that contract; or (2) by seeking to enforce the terms of that contract or asserting claims that must be determined by reference to that contract. Noble Drilling Servs., Inc. v. Certex USA, Inc. , supra ; In re Lloyd's Register N. Am., Inc. , supra .
Carter is the owner of Traders' Mart and was a signatory to the contract with AOS. He testified that he was aware of the arbitration clause. Therefore, it is clear that, through Carter's knowledge, Traders' Mart had actual knowledge of the contract and its arbitration clause. As stated earlier, Traders' Mart could not trade securities on its own. The company could engage in its business only through the actions of Carter and other employees of the company. Carter stated that the purpose of the contract was to allow him to make transactions on behalf of the clients of Traders' Mart. Simply stated, without Carter's contract with AOS, Traders' Mart could not do business. Traders' Mart benefitted from commissions paid by AOS. These facts establish that the existence of Traders' Mart was dependent upon Carter's contract with AOS.
*429 Although Traders' Mart claims its LUTPA suit was not aimed at seeking to enforce the contract, the company is asserting claims that must be determined by reference to the contract. Carter testified that the cancellation of the contract was wrongful and was part of a scheme to deprive Traders' Mart of business. He claimed that the termination of the contract damaged the ability of Traders' Mart to sustain itself. In its petition, Traders' Mart stated that the contract "is part and parcel of the scheme through which the defendants have undertaken to steal the business of Traders' Mart." Under these facts, AOS has shown that Traders' Mart embraced the contract and received direct benefits from it. While Traders' Mart argues that it is not seeking to enforce the contract, it does make allegations that the termination of the contract was wrongful, the termination damaged the company, and this formed the basis of its LUTPA claim against AOS.
The facts of this case show that Traders' Mart exploited and embraced the contract and knowingly sought and obtained direct benefits from the contract. Because the elements for direct benefits estoppel have been shown by AOS, the arbitration requirement is applicable to this case even though Traders' Mart is a nonsignatory to the agreement between AOS and Carter. This satisfies the requirement that there be a valid arbitration agreement in this matter.
We also find that the dispute in question falls within the scope of the arbitration agreement. Traders' Mart argued that it is asserting a tort claim and not a contract claim; therefore, the arbitration agreement is not applicable here. The arbitration clause is broad and encompasses "[a]ny controversy between Company and Contractor arising out of or relating to this Agreement [or] the breach thereof." Parties to broad arbitration agreements cannot avoid them by casting their claims in tort rather than in contract. See Grigson v. Creative Artists Agency, L.L.C. , supra ; Saavedra v. Dealmaker Devs., LLC , 2008-1239 (La. App. 4 Cir. 3/18/09), 8 So.3d 758, writ denied , 2009-0875 (La. 6/5/09), 9 So.3d 871. Louisiana courts have recognized a strong presumption in favor of arbitration and any doubt as to whether a controversy is subject to arbitration should be resolved in favor of arbitration. Sturdy Built Homes, L.L.C. v. Carl E. Woodward L.L.C. , 2011-0881 (La. App. 4 Cir. 12/14/11), 82 So.3d 473, writ denied , 2012-0142 (La. 3/23/12), 85 So.3d 94. The arbitration clause in this matter is broad enough to encompass Traders' Mart's LUTPA claims. Therefore, we find that the trial court did not err in sustaining the exception of prematurity filed by AOS, ordering the claims between Traders' Mart and AOS to be submitted to arbitration, and staying the proceedings pending arbitration. The factual findings made by the trial court are fully supported by the record and the trial court did not commit any legal error in applying the doctrine of direct benefits estoppel to the circumstances presented here.
CONCLUSION
For the reasons stated above, we affirm the trial court judgment sustaining the exception of prematurity in favor of the defendant, AOS, Inc., d/b/a Moneyblock, ordering the claim asserted by Traders' Mart to arbitration, and staying the proceedings pending arbitration. Costs in this court are assessed to the plaintiff, Traders' Mart.
AFFIRMED.

FINRA stands for the Financial Industry Regulatory Association.

As to the exception of no cause of action, AOS contended that the wrong party was asserting the wrong claim. AOS pointed out that the allegations in the petition stemmed from the contract between AOS and Carter. Traders' Mart, not Carter, filed this action for violation of the LUTPA. AOS argued that Traders' Mart and AOS were competitors, free to engage in competitive behavior so long as it was not egregious. According to AOS, Traders' Mart had not alleged any egregious, immoral, or oppressive behavior, and, therefore, Traders' Mart's LUTPA claim should be dismissed. This exception was rendered moot as a result of the ruling on the dilatory exception of prematurity.

Recoulley filed a denial to the claims against her. She did not join in the exceptions filed by AOS.

During the course of the proceedings, matters between the attorneys representing the parties became particularly contentious. After AOS filed its exceptions, Traders' Mart sent the attorneys for AOS a letter threatening that, if the exceptions were not withdrawn, a motion for sanctions would be filed. The attorneys for AOS responded in an email maintaining that the exceptions were well-founded. They urged counsel for Traders' Mart to refrain from personal animosity and attacks, or a motion for sanctions might be directed toward them. The attorney for Traders' Mart responded, "People who whine nauseate me. Send your whines elsewhere." The motion for sanctions was filed by Traders' Mart, asserting that AOS filed frivolous and vexatious exceptions in order to delay the proceedings. AOS filed an opposition to the motion for sanctions, arguing this was a baseless attempt to distract the court from the obvious merits of the exceptions. As noted above, the trial court denied the motion for sanctions after sustaining AOS's exception of prematurity.

See Traders' Mart, Inc. v. AOS, Inc. DBA MoneyBlock and Tammy Recoulley , 52,335 (La. App. 2 Cir. 7/26/18).